**Beneta K. NEAL, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 10S00–9408–CR–00710.

Supreme Court of Indiana.

Dec. 21, 1995.

Dawn R. Elston, Chief Public Defender, Jeffersonville, for Appellant.

Pamela Carter, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, Office of the Attorney General, Indianapolis, for Appellee.

## ON DIRECT APPEAL

SELBY, Justice.

Beneta K. Neal was convicted of murder and conspiracy to commit murder. She was sentenced to sixty (60) years on the murder conviction, and fifty (50) years for conspiracy, with the sentences to be served consecutively. This case comes to us on direct appeal, and Neal appeals both convictions. We affirm the murder conviction and vacate the conviction for conspiracy to commit murder.

The issues presented for review are whether the trial court erred in allowing a state's witness to testify as to a threat made by the defendant against the investigating officer, and whether the court erred in sentencing Neal on both murder and conspiracy to commit murder.

## FACTS

James Neal married Beneta while on vacation in late June and early July, 1992. On James' first day back to work following this vacation, Beneta telephoned her new husband's employer to inquire about his life insurance. Several months later, James changed his life insurance policy to name Beneta as the primary beneficiary.

On February 17, 1993, Beneta Neal called her ex-sister-in-law, Tamara Owen, and asked to borrow some money. Ms. Owen and her boyfriend agreed to lend her $200. When she arrived to pick up the check, Beneta explained that she needed the money to file for divorce. The next day John Vausha, Beneta's son, purchased a D–25 caliber Derringer handgun.

On March 4, 1993, Detective Maynard Marsh of the Jeffersonville Police Department was called to investigate the homicide of James Neal. James Neal's body had been found behind his house. He was sitting on his right hand, and had a cigarette cupped in his left hand. Police observed one wound behind his left ear. No weapons were found at the site.

Beneta Neal informed Detective Marsh that her husband was late arriving home that day. When she looked out the window and saw his car in the drive, she felt sure that something was wrong. She awakened her daughter, Diane Vausha, and her daughter's boyfriend, Charles Montgomery, and the three of them went out to the driveway where they discovered James Neal's body. Montgomery checked for a pulse, and when he could not find one, they went inside and called 911. Beneta Neal and her daughter told Detective Marsh that there were no marital problems, there were no weapons inside the house, and no member of Neal's family had purchased or owned any guns.

At the time of the initial investigation, police investigators were only aware of the single wound to the victim's head. An autopsy later revealed a second gunshot wound, to the victim's chest. However, according to Diane Vausha and Charles Montgomery, even at the time of the initial investigation, the immediate family members were aware of the chest wound.

When John Vausha was questioned by police, he informed them that he had purchased a gun and had fired it into a 55–gallon metal drum located at his residence. He also informed police that the gun had been stolen in a burglary of his residence. Three rounds which were recovered from the vicinity of the drum were compared to the two rounds which were removed from the victim's body during the autopsy. A ballistics examination performed at the Indiana State Police Lab revealed that all five rounds were fired from the same weapon, and that weapon could have been a D–25 caliber Derringer.

John Vausha was arrested on June 24, 1993, and charged with murder and conspiracy to commit murder. He pled guilty to the conspiracy to commit murder charge. As a condition of the plea agreement, he agreed to testify at the trial of Beneta Neal. Beneta was then arrested on September 14, 1993. At trial, John confirmed that Beneta had given him $200 to purchase a gun. He explained that he was supposed to purchase a "hot" gun, so that it could not be traced. However, before he had a chance to do this,

Beneta took the Derringer. She had been in a hurry because she had a debt to pay and needed James' insurance money. John also admitted that he had been present when James Neal was killed, but his mother, Beneta Neal, fired the weapon.

## I.

■ Neal contends that the trial court erred by allowing testimony about a threat that she had made. Sometime in August of 1993, as the investigation was closing in on her, Neal allegedly told Janet Shewmaker, a member of her church, that if "Detective Marsh did not quit harassing her family that they might find his body somewhere." [R. 669]. Over the objections of defense counsel, Shewmaker testified about this to the jury. Neal argues that this statement was improperly admitted.

Defendant argues, citing *Brennan v. State* (1994), Ind., 639 N.E.2d 649, 651, that this testimony is evidence of specific prior bad acts, and since she never introduced evidence of her reputation for peacefulness, only general reputation evidence can be admitted.

Threats against potential witnesses are not introduced as prior acts of misconduct to impeach the credibility or attack the character of the defendant. We have long held that threats against potential witnesses are attempts to conceal or suppress implicating evidence, and are admissible as bearing upon a defendant's guilty knowledge. *Valle v. State* (1990), Ind., 550 N.E.2d 746, 748 (killing and wounding of two potential witnesses admissible as threats); *Gambill v. State* (1985), Ind., 479 N.E.2d 523, 528 (implied threat relevant and proper for consideration by the jury); *Johnson v. State* (1985), Ind., 472 N.E.2d 892, 910 (threats to kill the victim, several witnesses, and the prosecuting attorney admissible as relevant to demonstrate an accused's guilty knowledge). As an investigator, Detective Marsh was a potential

witness at the time the threat was made, and he did in fact testify at the trial.[1]

■ Neal also argues that Shewmaker inaccurately related the story. According to Neal, she was merely telling Shewmaker about a statement made to her by John Vausha, that "people down in Crawford County do not care for cops and they would just as soon see them along side the road as they would to talk to them." [R. 953]. However, the conflict between the testimony of Shewmaker and Neal goes to the weight of the evidence, not its admissibility. *See, e.g., Marshall v. State* (1993), Ind., 621 N.E.2d 308. It is for the jury to "believe the witnesses or disbelieve them, and to disregard the testimony of a witness they do not believe." *Roberson v. State* (1982), Ind. 430 N.E.2d 1173, 1175. The trial court was correct to allow this testimony.

## II.

■ Defendant next argues that the convictions for murder and for conspiracy to commit murder violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article 1, § 14 of the Indiana Constitution. Double jeopardy applies to successive punishments, as well as successive prosecutions.

The standard for analyzing whether two offenses are the same is the test which was first announced in *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Id.* at 304, 52 S.Ct. at 182.

We have long held that a charge and a conviction for both a substantive offense and conspiracy to commit that offense does not in and of itself violate double jeopardy. *See,*

---

1. We note that in addition to being admissible as a threat, this testimony was also admissible as a statement by a party-opponent. Such statements are admissible as non-hearsay under the newly adopted Indiana Rules of Evidence, Rule 801(d)(2)(A). Our rule is analogous to Fed. R.Evid. 801(d)(2)(A), which also allows such statements to be admitted. *E.g. Gentry v. State* (1993), Ind.App., 625 N.E.2d 1268; *see, e.g., Bell v. City of Milwaukee* (1984), 7th Cir., 746 F.2d 1205, 1274; *United States v. Lambert* (1993), 10th Cir., 995 F.2d 1006; *United States v. Guerrero* (1986), 3rd Cir., 803 F.2d 783.

*e.g., Derado v. State* (1993), 622 N.E.2d 181; *Witte v. State* (1990), Ind., 550 N.E.2d 68. This applies to murder as well as to other offenses. *Witte,* 550 N.E.2d at 71; *Buie v. State* (1994), 633 N.E.2d 250, 260. Applying *Blockburger,* we find that the offense of murder requires proof of knowingly or intentionally killing a person, while conspiracy requires proof of an agreement to commit the underlying felony as well as an overt act in furtherance of the agreement. IND.CODE §§ 35–41–5–2, 35–42–1–1(1).

However, this is not the end of the analysis. We must look at the way in which the offenses are charged. In double jeopardy analysis, crimes cannot be abstracted from their separate elements. *E.g., Derado,* 622 N.E.2d at 183. The information charging the defendant with murder reads as follows:

> On March 4, 1993, **BENETA K. NEAL** did knowingly or intentionally kill **JAMES EDWARD NEAL** by shooting him with a .25 caliber Davis D–25 Derringer.

The information for conspiracy to commit murder charged that:

> On or about and between February and [M]arch, 1993, **BENETA K. NEAL** did conspire to commit the felony offense of Murder, to-wit: knowingly or intentionally killing **JAMES EDWARD NEAL,** and did agree with **JOHN GLENARD VAUSHA, III,** or unnamed person or persons to commit said murder, and an overt act in furtherance of this agreement was performed by BENETA K. NEAL or JOHN GLENARD VAUSHA, III or other unnamed person or persons with whom she agreed, to-wit: shooting JAMES EDWARD NEAL with a Davis D–25 Derringer, thereby causing his death, all with the intent to kill JAMES EDWARD NEAL.

Thus, the overt act in support of the conspiracy count is the shooting of James Neal. Because of the way conspiracy was charged, no additional facts were required to prove the murder charge beyond those facts necessary to prove conspiracy. Therefore, double jeopardy principles bar conviction for both offenses. *United States v. Dixon* (1993), 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556.

Accordingly, we vacate Beneta Neal's conviction for conspiracy to commit murder.

### Conclusion

We affirm the conviction for murder. The matter is remanded to the trial court with instructions to vacate the conviction and sentence on the conspiracy charge.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.