Clyde B. ATCHLEY, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 20A05–9907–PC–328.

Court of Appeals of Indiana.

June 20, 2000.

Transfer Denied Sept. 1, 2000.

---

John Pinnow, Special Assistant to the State Public Defender, Greenwood, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge

■ Clyde B. Atchley appeals the denial of his petition for post-conviction relief (PCR),[1] in which he challenges his conviction of five counts of Murder. Atchley presents the following restated issues for review:

1. Did Atchley's multiple murder convictions violate his right against double jeopardy under the Indiana Constitution?

2. Did appellate counsel render ineffective assistance in failing to challenge the sentence imposed for one of the murder counts?

We affirm.

The facts favorable to the convictions were set out by our supreme court, which affirmed Atchley's convictions upon direct appeal. Those facts are as follows:

On January 27, 1980, a fire was discovered at the Swiss Inn in Elkhart, Indiana. The record shows that turpen-

---

1. The State suggests that the instant appeal should be dismissed because it constitutes an impermissible successive post-conviction petition. We do not agree. The record reflects that Atchley filed a PCR petition on February 20, 1990. Before the court ruled upon that petition, Atchley successfully sought permission to file a belated praecipe for the purpose of appealing the trial court's denial of his motion to withdraw his guilty plea. Our supreme court affirmed the trial court's ruling in that regard in the aforementioned opinion. After the supreme court affirmed the denial of Atchley's motion to withdraw his guilty plea, Atchley filed an amended PCR petition on August 2, 1996.

tine was used as an accelerant to start a fire in a stairwell. As a result, five people died. Appellant eventually was arrested. Following his arrest, and after receiving his *Miranda* warnings, appellant gave a statement to the police which was introduced in evidence as State's Exhibit 1. However, for some reason, that exhibit does not appear in the record filed in this appeal. Nonetheless, the content of the statement is discussed in the testimony of Homer A. Schenk, a detective with the Elkhart Police Department, who took the statement from appellant. In the statement, appellant confessed to setting the fire in the hotel and to using turpentine as an accelerant. The officer testified that chemical tests verified that turpentine in fact was used as an accelerant.

In rendering the sentence, the trial judge quoted from some of the confession given by appellant in which appellant stated, "I felt that by starting the fire I would be able to get back at them." The trial judge further observed that upon reading appellant's statement it was evident he gave the police information which could have been known only by the perpetrator. In addition, at the time appellant appeared before the trial court to enter a plea of guilty, he tendered the written plea agreement which acknowledged that he in fact was guilty of setting the fire.

*Atchley v. State*, 622 N.E.2d 502, 503 (Ind. 1993).

■ When appealing the denial of a PCR petition, the appellant faces a rigorous standard of review. The appellant must demonstrate that the evidence, when taken as a whole, is without conflict and "leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court." *Benefiel v. State*, 716 N.E.2d 906, 912 (Ind.1999), *petition for cert. filed*, (U.S. April 24, 2000) (No. 99–9264) (quoting *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind.1993)). We accept the trial court's findings of fact unless they are clearly erroneous, *see* Ind. Trial Rule 52(A), but we do not defer to the trial court's conclusions of law. Atchley bears the burden of establishing his grounds by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5).

### 1.

Atchley contends that his conviction of five counts of murder violated the double jeopardy clause of the Indiana Constitution.

■ A post-conviction proceeding does not afford defendants the opportunity for a "super-appeal." *Conner v. State*, 711 N.E.2d 1238 (Ind.1999), *petition for cert. filed* (U.S. April 7, 2000) (No. 99–8989). Instead, such proceedings provide defendants with an opportunity to raise issues that were not known at the time of the original trial, or that were unavailable on direct appeal. *Id.* They do not substitute for direct appeals, but rather provide a narrow remedy for subsequent collateral challenges to convictions. *Id.* "Issues that were available, but not presented, on direct appeal are forfeited on post-conviction review." *Id.* at 1244.

■ Atchley seeks to avoid waiver by claiming fundamental error. Exceptions to the waiver doctrine will be made where the claimed error is fundamental. *Id.* To prevail on fundamental error grounds, Atchley must demonstrate by a preponderance of the evidence that a violation of the basic principles of law caused his conviction or sentence to be invalid. *See id.* Our supreme court has indicated that the scope of permissible, post-conviction claims of fundamental error is "extremely narrow." *Taylor v. State*, 717 N.E.2d 90, 94 (Ind.1999) (quoting *Canaan v. State*, 683 N.E.2d 227, 235 n. 6 (Ind.1997), *cert. denied*, 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998)). Specifically, such claims are limited to claims of ineffective assistance of counsel or issues demonstrably unavailable at the time of trial and

direct appeal. *Taylor v. State*, 717 N.E.2d 90.

■■■ The issue of whether his multiple convictions violated Indiana double jeopardy principles was available, but not presented, upon direct appeal. Therefore, review of the issue is not available on that basis. *Id.* Atchley claims that appellate counsel rendered ineffective assistance in failing to challenge his multiple convictions of murder on double jeopardy grounds. In the context of his post-conviction relief claim of ineffective assistance of appellate counsel, we review the issue of whether Atchley's multiple murder convictions constituted fundamental error because they violated Indiana's double jeopardy clause.

■■■ The standard of review for a claim of ineffective assistance of appellate counsel is the same as for trial counsel. *Trueblood v. State*, 715 N.E.2d 1242 (Ind. 1999). That is, in order to establish a violation of the Sixth Amendment right to effective assistance of counsel, the defendant must show that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Trueblood v. State*, 715 N.E.2d 1242. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052; *Trueblood v. State*, 715 N.E.2d at 1248–49. The Supreme Court of the United States has held that prejudice resulting from ineffective assistance is not established unless the error rendered the result of the proceeding fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

■■■ Finally, our supreme court has indicated that an appellant who alleges ineffective assistance of appellate counsel faces a daunting task:

A defendant alleging the ineffective assistance of appellate counsel ... bears a rigorous burden. Because the decision regarding what issues to raise and what arguments to make is " 'one of the most important strategic decisions to be made by appellate counsel,' " ineffectiveness is very rarely found. [*Bieghler v. State*, 690 N.E.2d 188, 193 (Ind.1997), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998) ] (quoting Lissa Griffin, The Right to Effective Assistance of Appellate Counsel, 97 W. VA. L.REV. 1, 26 (1994)). "Accordingly, when assessing these types of ineffectiveness claims, reviewing courts should be particularly deferential to counsel's strategic decision to exclude certain issues in favor of others, unless such a decision was unquestionably unreasonable." *Bieghler*, 690 N.E.2d at 194.

*Conner v. State*, 711 N.E.2d 1238.

■■■ Atchley claims that appellate counsel was ineffective for failing to challenge, on double jeopardy grounds, four of his five murder convictions. A recent decision of our supreme court established for the first time that the Indiana Constitutional double jeopardy prohibition is not coterminous with its counterpart in the Federal Constitution. *See Richardson v. State*, 717 N.E.2d 32 (Ind.1999). Atchley acknowledges that the *Richardson* analysis may not be applied retroactively in a post-conviction proceeding, and therefore that he "cannot rely on the actual evidence test announced in *Richardson* to argue that appellate counsel was ineffective for not raising a double jeopardy argument on appeal." Appellant's Brief at 17 (citing *Taylor v. State*, 717 N.E.2d 90). He contends, however, that appellate counsel's failure to present a double jeopardy challenge under the Indiana Constitution constituted ineffective assistance because there was then-existing Indiana Supreme Court precedent upon which to base such a challenge.

The case to which Atchley refers is *Clem v. State*, 42 Ind. 420 (1873). In that case,

Clem and two others had previously been charged with first-degree murder in connection with the shooting death of Jacob Young, who died as a result of a single gunshot wound to the head. Clem was convicted of second-degree murder after a jury trial. Subsequently, the State charged Clem with first degree murder in connection with the shooting death of Nancy Jane Young, who also died as a result of a single gunshot wound to the head. The opinion does not articulate specific facts with respect to the two killings. It may be inferred, however, that the two shootings occurred as parts of a single incident.

Clem entered a demurrer to the indictment for the first-degree murder of Jane Young, arguing that she had, in effect, already been acquitted of that charge when the jury in the first trial found her not guilty of first-degree murder in relation to the killing of Jacob Young. This argument was based upon her contentions that:

(1) "the crime charged against the defendant in (the first) indictment, and of which she was tried and acquitted as hereinbefore set forth, by the verdict of said jury, was and is identical in all its parts, incidents, and circumstances with the crime charged in the [second] indictment;" and

(2) "that the evidence, whereby alone the said plaintiff can or will attempt to support and prove the indictment against her in this case, is the same and nowise different from that employed and produced against her upon the trial of the [first] indictment[.]"

*Clem v. State*, 42 Ind. at 426.

In discussing the defendant's assertion, the supreme court indicated that a person could not be tried twice for the killing of two people if both were killed at the same time, as a result of the same act. The court expressed its views on this issue as follows:

If it be true, as we suppose it is, that the killing of two or more persons by the same act constitutes but one crime, then it follows that the State cannot indict the guilty party for killing one of the persons, and after a conviction or acquittal indict him for the killing of the other; for the State cannot divide that which constitutes one crime, and make the different parts of it the bases of separate prosecutions. But when the State has prosecuted the accused for one part of the crime, she cannot again prosecute him for the other or remaining part of it. Hence, if the killing of Jacob and Nancy Jane Young resulted from the same act, and therefore one crime, and the State has prosecuted the accused for the murder of Nancy Jane Young, one part of the crime, it cannot again prosecute her for the murder of Jacob Young, the other part of the crime.

\* \* \* \* \*

If the same act of the defendant resulted in the death of both of them, there was but one crime. Where, by the discharge of a fire-arm, or a stroke of the same instrument, an injury is inflicted upon two or more persons, or their death is produced, there is but one crime committed.

*Id.*, 42 Ind. at 427–29. The court explained that this view was based upon the premise that the individual victims could seek redress from the perpetrator through private action. The criminal implications of the act, on the other hand, were deemed to be "a question between the government and its subject." *Id.* at 430. The court held that the defendant in such cases could be held accountable for only one instance of "having disturbed the public peace," *id.*, regardless of the number of victims who were injured by the single act. In support of this view, the court cited a case in which a defendant was charged with but one offense for stealing a horse, saddle, bridle, blanket, and martingale, *see State v. Williams*, 29 Tenn. 101, 1849 WL 2128 (1849), and a case in which an indictment for only one offense was upheld when the defendant, in a single episode, stole the

goods of several victims. *See State v. Nelson*, 29 Me. 329 (1849).

Atchley claims that *Clem* established precedent by which appellate counsel on direct appeal should have presented the issue of the viability of his multiple convictions for murder in view of the double jeopardy prohibition contained in the Indiana Constitution. His failure to do so, according to Atchley, constituted ineffective assistance of counsel. We must consider counsel's failure to invoke *Clem* at the time of Atchley's direct appeal in light of the then-existing state of the law pertaining to double jeopardy claims arising under the Indiana Constitution.

The question we are called upon to answer is, did appellate counsel's failure to invoke *Clem* in Atchley's 1993 direct appeal fall below an objective standard of reasonableness as determined by prevailing professional norms? *See Rondon v. State*, 711 N.E.2d 506 (Ind.1999). Justice Boehm's concurring opinion in *Richardson* is enlightening on this question and we agree with its reasoning. Justice Boehm opined that the court could have decided that case without resort to the Indiana Constitution. In his view, "dual convictions in a single case do not present an Indiana constitutional double jeopardy claim at all." *Richardson v. State*, 717 N.E.2d at 57. In explaining his view, Justice Boehm indicated that the state of double jeopardy law as of 1999 would undoubtedly have permitted multiple convictions for murder where one act caused multiple deaths:

> Under current law, everyone seems to agree that it must be possible to charge a person who kills two people with two murders. The term "same offense" cannot refer simply to the same statutory crime, or it would be unconstitutional to prosecute the same person for two murders committed at different times and places. But in order to reach the conclusion that we have two different crimes, we must look at the facts of the two crimes, and not only the statutes

they offend. On the other hand, if the "offense" is solely the actions of the accused, it would be impossible to impose a greater punishment for murdering two victims by the same act, for example burning down a house and killing two inhabitants.

*Richardson v. State*, 717 N.E.2d at 68. Justice Boehm noted that earlier double jeopardy law held that two such convictions were barred. *Id.* at n. 22 (citing *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958) (single discharge from shotgun that injured two federal officers supports only one count of assault with a deadly weapon)). Writing in 1999, however, Justice Boehm succinctly stated, "This is not the law today." *Id.* (citing *Kelly v. State*, 527 N.E.2d 1148 (Ind.Ct.App.1988), *summarily. aff'd*, 539 N.E.2d 25 (Ind.1989) (where several deaths or injuries occur in the course of a single incident, the offense has been committed several times)). Thus, at the time of Atchley's direct appeal, six years earlier, it was regarded as settled law that the double jeopardy clause of the Indiana Constitution permitted multiple convictions of murder where a single act resulted in the deaths of multiple victims.

Perhaps nothing illustrates more graphically the proper context in which the holding in *Richardson* should be viewed than the sizeable body of case law that was expressly superseded by the principles set forth therein. *See Neal v. State*, 659 N.E.2d 122 (Ind.1995); *Chiesi v. State*, 644 N.E.2d 104 (Ind.1994); *Buie v. State*, 633 N.E.2d 250 (Ind.1994); *Webster v. State*, 628 N.E.2d 1212 (Ind.1994); *Campbell v. State*, 622 N.E.2d 495 (Ind.1993); *Wills v. State*, 595 N.E.2d 242 (Ind.1992); *Woodcox v. State*, 591 N.E.2d 1019 (Ind.1992); *Woods v. State*, 547 N.E.2d 772 (Ind.1989); *Ellis v. State*, 528 N.E.2d 60 (Ind.1988); *Jones v. State*, 523 N.E.2d 750 (Ind.1988); *Jones v. State*, 518 N.E.2d 479 (Ind.1988); *King v. State*, 517 N.E.2d 383 (Ind.1988); *Hansford v. State*, 490 N.E.2d 1083 (Ind. 1986); *Malott v. State*, 485 N.E.2d 879

(Ind.1985); *Flowers v. State*, 481 N.E.2d 100 (Ind.1985); *Deamus v. State*, 479 N.E.2d 1319 (Ind.1985); *Bevill v. State*, 472 N.E.2d 1247 (Ind.1985).

■ In view of the extensive body of countervailing law that developed in the more than 100 years following the *Clem* decision, appellate counsel's failure to cite *Clem* as authority for the proposition that Atchley's multiple convictions of murder violated the double jeopardy clause in the Indiana Constitution did not fall below an objective standard of reasonableness. The failure to establish either prong of an ineffective assistance of counsel claim will cause the entire claim to fail. *Emerson v. State*, 695 N.E.2d 912 (Ind.1998). Therefore, having determined that counsel did not render deficient performance, we need not consider the element of prejudice. Counsel did not render ineffective assistance of counsel in this regard.

### 2.

■ The court sentenced Atchley to sixty years' imprisonment for each of the five counts of murder. The court ordered that the sentences on the convictions for Counts I through IV were to run concurrent with one another. The court ordered that forty years of the sentence for the conviction on Count V was to run consecutive to the other sentences, and the remaining twenty years was to run concurrent with the sentences imposed for Counts I through IV. Atchley contends that appellate counsel rendered ineffective assistance in failing to challenge the split sentence imposed for the conviction on Count V.

■ We note that the State has entirely failed to respond to Atchley's second claim of ineffective assistance of counsel in its Appellee's brief. "An appellee's failure to respond to an issue raised by an appellant is akin to failure to file a brief." *Newman v. State*, 719 N.E.2d 832, 838 (Ind.Ct.App.1999). Notwithstanding this omission, we are obliged to decide the law

as applied to the facts in the record in order to determine whether reversal is required. *Id.* Controverting arguments advanced for reversal remains the obligation of appellee's counsel. Therefore, Atchley will win reversal on this issue if he establishes that the post-conviction court committed prima facie error. *Id.* Prima facie error is error that is evident at first sight, on first appearance, or on the face of it. *Id.* As this court stated in *Newman:*

> The prima facie standard ... prevents two evils which would otherwise undermine the judicial process. First, by requiring the appellant to show some error, we ensure that the court, not the parties, decides the law. Second, by allowing the appellant to prevail upon a showing simply of prima facie error, we avoid the improper burden of having to act as advocate for the absent appellee.

*Newman v. State*, 719 N.E.2d at 838 (quoting *Gardner v. State*, 591 N.E.2d 592, 593 (Ind.Ct.App.1992)).

■ According to the laws governing sentencing at the time of Atchley's direct appeal, the decision whether to impose consecutive sentences was committed to the trial court's discretion. *See Steele v. State*, 569 N.E.2d 652 (Ind.1991). However, a trial court could impose consecutive sentences only if that determination fell within the parameters of the applicable sentencing statutes. *Shippen v. State*, 477 N.E.2d 903 (Ind.1985). Ind.Code Ann. § 35–50–1–2 governs the imposition of consecutive sentences. The version of that provision which was in force at the time of Atchley's direct appeal stated:

> (a) Except as provided in subsection (b) of this section, the court shall determine whether terms of imprisonment shall be served concurrently or consecutively.
>
> (b) If a person commits a crime;
>
> (1) after having been arrested for another crime; and
>
> (2) before the date he is discharged from probation, parole, or a term of

imprisonment imposed for that other crime;

the terms of imprisonment for the crimes shall be served consecutively, regardless of the order in which the crimes are tried and sentences are imposed.

 We agree that the sentence imposed on Count V was not customary, and that IC § 35–50–1–2 does not specifically authorize what amounts to a split sentence.[2] We cannot agree, however, that the absence of express authorization for such a sentence in IC § 35–50–1–2 renders the sentence improper. In our view, IC § 35–50–1–2 should be understood to govern two aspects of consecutive sentencing. First, it specifies when, or under what circumstances, a consecutive sentence either may or shall be imposed. *See, e.g., Weaver v. State,* 664 N.E.2d 1169 (Ind.1996) (a trial court cannot order consecutive sentences without express statutory authority); *Miller v. State,* 637 N.E.2d 1359 (Ind.Ct.App.1994). (affirming the imposition of consecutive sentence mandated by statute). Second, IC § 35–50–1–2 enumerates the procedures to which trial courts must adhere when imposing consecutive sentences. *See, e.g., Morgan v. State,* 675 N.E.2d 1067 (Ind. 1996) (when imposing consecutive sentences where such are not mandatory, the sentencing court must reveal its rationale for doing so); *Becker v. State,* 695 N.E.2d 968 (Ind.Ct.App.1998) (when the trial court exercises its discretionary authority to impose consecutive sentences, it must enter, on the record, a statement which (1) identifies all of the significant mitigating and aggravating circumstances; (2) states the specific reason why each circumstance is considered to be mitigating or aggravating; and (3) shows that the court evaluated and balanced the mitigating circumstances against the aggravating circumstances in order to determine if the aggravating circumstances offset the mitigating circumstances). These two aspects of consecutive sentencing are customarily the primary questions facing a trial court when considering the imposition of consecutive sentences.

 This is not to say, however, that these are the only two considerations, or that every other aspect of sentences imposed consecutively that is not specifically addressed therein is governed by the provisions of IC § 35–50–1–2. For example, the parameters concerning the length of a sentence imposed for a particular offense, without regard to whether it is imposed consecutively, is established elsewhere in the criminal code. For any particular offense, the determination of the length of an appropriate sentence within the prescribed statutory range is left to the discretion of the sentencing court, without resort to provisions of IC § 35–50–1–2, and without regard to whether a particular sentence is imposed consecutive to another sentence. Accordingly, a sentencing court must consult the appropriate statutes, which do not include IC § 35–50–1–2, to determine the range of possible penalties applicable to a given offense. When determining the appropriate sentence within the prescribed range, the court may suspend all or a portion of that sentence, again subject to the limitations set out elsewhere in the criminal code.

Therefore, in sentencing, the court first must determine the length of a sentence within the prescribed, statutory range, and then must determine what portion of that sentence, if any, should be suspended. Only then must a court consult IC § 35–50–1–2 to determine whether a consecutive sentence may or must be imposed. In the event that the court decides to impose a sentence consecutive to another sentence, the court also must adhere to requirements set forth in IC § 35–50–1–2 with

**2.** A split sentence is one by which the defendant serves a portion of the total sentence, and the balance of the sentence is suspended.

*See Page v. State,* 706 N.E.2d 230 (Ind.Ct.App. 1999), *trans. denied.*

respect to the procedure to be followed in imposing consecutive sentences.

In summary, because IC § 35–50–1–2 is limited in applicability to the two aspects of consecutive sentencing as set forth previously, *i.e.*, whether to impose and the procedure to be followed when imposing, we conclude that IC § 35–50–1–2 does not prohibit the action taken by the trial court in the instant case with respect to the sentence imposed on Count V. Therefore, counsel's failure to object to the sentence imposed on Count V did not constitute deficient performance and Atchley has not made a prima facie showing that he received ineffective assistance of counsel in that regard.

Judgment affirmed.

NAJAM, J., and RILEY, J., concur.