## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 30 2020, 9:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Rahul B. Patel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Colby R. McKnelly,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent,*

November 30, 2020

Court of Appeals Case No.
19A-PC-2597

Appeal from the Hancock Circuit Court

The Honorable R. Scott Sirk, Judge

Trial Court Cause No.
30C01-1602-PC-282

**Robb, Judge.**

# Case Summary and Issues

[1]     Following a bench trial in 2013, Colby McKnelly was convicted of murder and battery, a Class C felony. The trial court sentenced McKnelly to an aggregate term of seventy-three years. On direct appeal, McKnelly challenged his convictions and sentence and this court affirmed. *McKnelly v. State*, No. 30A05-1307-CR-378 (Ind. Ct. App. Aug. 29, 2014), *trans. denied*. In 2016, McKnelly filed a petition for post-conviction relief alleging ineffective assistance of trial counsel. The petition was denied by the post-conviction court. McKnelly now appeals the denial of post-conviction relief, raising two issues for our review which we restate as: (1) whether the post-conviction court properly denied admission of McKnelly's alleged newly discovered evidence; and (2) whether the post-conviction court erred in determining McKnelly's trial counsel was not ineffective. Concluding McKnelly waived his right to challenge the post-conviction court's exclusion of new evidence and the post-conviction court did not err in finding McKnelly's trial counsel was not ineffective, we affirm.

# Facts and Procedural History

[2]     We summarized the facts and procedural history of this case in McKnelly's direct appeal:

> In December 2012, McKnelly and Jessi Parsons Freeman ("Freeman") were dating and living together. On December 23, 2012, McKnelly and Freeman went shopping and later went to the home of Steven Rogers ("Rogers"). McKnelly and Freeman stayed at Rogers's house for about an hour before they all left to

buy food and alcohol. All three then went back to McKnelly's house.

At McKnelly's house, everyone was drinking, listening to music, and playing pool. At some point, McKnelly and Freeman began to argue, and McKnelly struck Freeman. She then hid from McKnelly so that she could later sneak out of the house. McKnelly found Freeman and dragged her back into a bedroom. Eventually, they both went to sleep. At 4 A.M., McKnelly woke Freeman up and told her that he wanted to go to the home of Chris Cave ("Cave"). McKnelly and Freeman drove to Cave's house, which was a few blocks away. Rogers did not go to Cave's house and stayed at McKnelly's.

When McKnelly and Freeman arrived at Cave's home, McKnelly told Freeman that he "hope[d] there's no kids in there because [he's] going to kill everybody." McKnelly sent a text message to Cave, and Cave responded that he did not want any company. Raymond Kalchthaler ("Kalchthaler") was staying with Cave and was also friends with McKnelly. McKnelly called Kalchthaler, and Kalchthaler went outside to meet McKnelly and Freeman. When Kalchthaler exited the house, Freeman left the car and walked toward McKnelly's house. McKnelly and Kalchthaler got in the car and followed her.

Once they arrived at McKnelly's house, McKnelly turned into the driveway, got out of the car, and began arguing with Freeman. Kalchthaler exited the car and walked toward a gas station, as he did not want to be involved in their argument. McKnelly told Freeman to go in the house, and she refused. McKnelly then got behind Freeman in an effort to push her towards the house. At some point while pushing Freeman toward the house, McKnelly cut her elbow with a knife. Freeman again told McKnelly that she did not want to go in the house and

that she wanted to leave. McKnelly told Freeman that if she left, he would kill her.

Kalchthaler came back to McKnelly's house soon afterward, and saw Freeman on a bed crying and holding her arm. Kalchthaler testified that he felt very uneasy walking through the house, that "the atmosphere was heavy," and that "[he] felt like it was almost directed toward [him]." McKnelly and Kalchthaler went outside to the front porch. Freeman came outside and asked Kalchthaler for a cigarette, and McKnelly told her to go back in the house. Rogers was in the kitchen eating, and Freeman told him that McKnelly had cut her. McKnelly told Rogers that Freeman had jumped out of the car and that her injuries were road rash. McKnelly took Freeman to the bathroom and put gauze and a bandage around her elbow wound. While doing so, McKnelly told Freeman that she "saved [Kalchthaler's] ass."

After bandaging the wound, McKnelly told Freeman that he was going to kill Rogers. Freeman asked McKnelly why and told him that they should take Rogers home instead. Rogers was walking through the house when McKnelly began saying disparaging remarks about himself. According to Freeman's testimony, Rogers told McKnelly "there's nothing wrong with you dude." Rogers then tried to give McKnelly a hug, but McKnelly stabbed him in the chest. Rogers grabbed a knife that was nearby and stabbed McKnelly. The two fought, and McKnelly got behind Rogers and stabbed him over fifty (50) times in the back of his head, neck, and back. Eventually the men stopped fighting and stumbled through the living room of the house. Rogers took out his cell phone and, according to Freeman, called his grandmother to "tell her bye." McKnelly grabbed the phone from Rogers and hit him on the head with a thick, metal flashlight at least four times. Freeman and McKnelly left Rogers in the house and fled in McKnelly's car. Freeman drove McKnelly to his mother's home, and [he] told her not to tell his mother what had happened and to say he had acted in self-defense. Freeman

dropped McKnelly off at his mother's house. She then went to her parents' house and asked her father to call 911. Officers went to McKnelly's house and found Rogers, who had died from his injuries.

On December 27, 2012, the State charged McKnelly with murder, Class B and Class C felony criminal confinement, Class C felony battery, Class D felony intimidation, and Class A misdemeanor domestic battery. McKnelly waived his right to a jury trial, and the trial court held a bench trial June 11, 2013. Before the trial began, the State dismissed several charges and went forward on the murder and felony battery charges.

*Id.* at *1-2 (citations omitted).

[3] At trial, McKnelly testified on his own behalf and stated that Rogers started the fight by stabbing him in the chest. McKnelly further testified that he was afraid for his life and was defending himself from Rogers. Trial counsel argued that "self-defense ha[d] been established and [was] a complete defense" to McKnelly's murder charge. [Trial] Transcript, Volume III at 241.[1] Trial counsel did not argue for the lesser included offense of manslaughter. The trial court found McKnelly guilty of murder and battery with a deadly weapon, a Class C felony, and sentenced him to an aggregate term of seventy-three years in the Indiana Department of Correction.

---

[1] Citation to the [Trial] Transcript is based on the .pdf pagination.

[4] McKnelly raised three issues on direct appeal: (1) whether the State committed prosecutorial misconduct in the presentation of its evidence; (2) whether sufficient evidence supports McKnelly's convictions; and (3) whether McKnelly's sentence was inappropriate. *McKnelly*, No. 30A05-1307-CR-378 at *1. A panel of this court affirmed in all respects. *Id.*[2]

[5] In 2016, McKnelly filed a petition for post-conviction relief alleging only ineffective assistance of trial counsel. On July 30, 2018, an evidentiary hearing was held at which trial counsel testified. McKnelly subpoenaed Freeman and Mike Emerick[3] for this hearing; however, McKnelly elected not to call Freeman as a witness after she affirmed she would testify as she had at trial and Emerick failed to appear. On February 13, 2019, the evidentiary hearing continued. Emerick did appear on that date and testified that after McKnelly's trial, Freeman had recanted her trial testimony. The State objected to Emerick's testimony as hearsay and McKnelly claimed Emerick was a rebuttal or impeachment witness to Freeman's testimony in the State's case-in-chief at trial. The post-conviction court took the State's hearsay objection under advisement and allowed Emerick to continue to testify. Emerick testified that he had known Freeman for fourteen years and three or four weeks after McKnelly was sentenced, Freeman told him a different story about the night of the murder than she had told at trial. At the conclusion of the hearing, the post-

---

[2] The court did remand for the trial court to correct an error in the Abstract of Judgment.

[3] Emerick is a friend of Freeman's whom she allegedly confided in after McKnelly's sentencing.

conviction court instructed the parties to submit proposed findings of fact and conclusions of law and include argument on the hearsay issue.

[6] On June 25, 2019, McKnelly filed his proposed findings of fact and conclusions of law. The proposed order also included a request for a hearing about the use of Emerick's testimony. The post-conviction court granted McKnelly's motion and set a hearing for October 1. On August 7, 2019, the post-conviction court issued its findings of fact and conclusions of law "on the issue of attorney representation," finding that McKnelly failed to show that trial counsel's representation was deficient or prejudicial. Appendix of Appellant, Volume 3 at 139, 153. On October 1, 2019, the post-conviction court held the hearing regarding Emerick's testimony and subsequently issued an order finding Emerick's testimony was impermissible as impeachment testimony under Indiana Rule of Evidence 613 because Freeman did not testify during the post-conviction proceedings and if offered for the truth of the matter asserted, was inadmissible as hearsay. The post-conviction court denied post-conviction relief. McKnelly now appeals.[4]

# Discussion and Decision

---

[4] The post-conviction court issued two orders: the August 7 order about ineffective assistance of counsel and an October 8 order about Emerick's testimony. McKnelly's appeal raises issues addressed in both orders; however, he filed only the October 8 order with his brief. We remind counsel that Indiana Appellate Rule 46(A)(12) requires that *any* appealed order or judgment relating to the issues raised on appeal should be submitted with the brief as a separate attachment.

# I. Post-Conviction Standard of Review

Post-conviction proceedings are civil in nature and the petitioner must therefore establish his claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A post-conviction proceeding does not afford defendants the opportunity for a "super-appeal." *Atchley v. State*, 730 N.E.2d 758, 762 (Ind. Ct. App. 2000) (citation omitted), *trans. denied.* Instead, such proceedings provide defendants with an opportunity to raise issues that were not known at the time of the trial, or that were unavailable on direct appeal. *Id.* When appealing the denial of post-conviction relief, the appellant faces a "rigorous standard of review," *id.,* as the reviewing court may consider only the evidence and the reasonable inferences supporting the judgment of the post-conviction court, *Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010), *trans. denied.* The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. *Id.* A petitioner denied post-conviction relief must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court. *Id.*

## II. Emerick's Testimony

McKnelly argues that Mike Emerick's testimony should have been considered to be newly discovered evidence.[5] The purpose of the post-conviction relief process is to allow a petitioner to raise issues not known at the time of the original trial and appeal or for some reason not available to the petitioner at that time. *Kirk v. State*, 632 N.E.2d 776, 779 (Ind. Ct. App. 1994). A valid claim of newly discovered evidence was, by definition, not known at the time of trial.

In seeking post-conviction relief, a petitioner must assert all available grounds for relief in his original post-conviction petition. P-C.R. 1(8). It is well settled that "issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal." *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005) (citation omitted), *trans. denied.* In *Johnson*, the petitioner did not raise a newly discovered evidence claim in his petition, instead raising the issue for the first time on appeal from the denial of post-conviction relief. Therefore, we found his argument waived.

---

[5] McKnelly also argues the evidence should have been reopened to allow him to call Freeman to testify and if she testified as she had at trial, to then use Emerick's testimony as impeachment evidence. However, this is not a viable post-conviction claim as he does not raise it in the context of ineffective assistance of counsel. Further, he could not raise it in the context of ineffective assistance of counsel because the subject of Emerick's testimony took place after the trial.

[10]     Here, McKnelly appeals the exclusion of Emerick's testimony as newly discovered evidence; however, McKnelly did not include any claim regarding Emerick's testimony in his original petition for post-conviction relief or file an amended petition to include such claim after Emerick's testimony came to light.[6] Therefore, he waived any challenge to the admissibility of Emerick's testimony.

[11]     Further, McKnelly waives this argument by failing to cite any authority or present a cogent argument as required by Indiana Appellate Rule 46(A)(8)(a). McKnelly's brief does not contain a single case or statutory citation in the argument section about this issue. *See* Brief of Appellant at 12-14. Generally, to obtain relief because of newly discovered evidence a party is required to show that:

> (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced on a retrial of the case; and (9) it will probably produce a different result.

*Webster v. State*, 699 N.E.2d 266, 269 (Ind. 1998). McKnelly has failed to show that Emerick's testimony meets this standard. Emerick testified that Freeman

---

[6] In McKnelly's petition for post-conviction relief, he states that trial counsel failed to investigate and interview witnesses, including Emerick. App. of Appellant Vol. 2 at 22. However, McKnelly does not appeal that claim of ineffective assistance of counsel and in fact, could not have, because Emerick's testimony concerned events that occurred *after* McKnelly's trial.

recanted her trial testimony to him after McKnelly's sentencing; however, McKnelly fails to show that it is "not merely impeaching[.]" *Id*. Further, he provides no other case law to support his argument that Emerick's testimony was "newly discovered evidence, which the Court should consider." Br. of Appellant at 14. Therefore, his argument that the post-conviction court erred in its handling of this evidence is waived.

# III. Ineffective Assistance of Trial Counsel

[12]   McKnelly alleges the post-conviction court erred in finding his trial counsel's performance was not deficient. Although his petition for post-conviction relief alleged numerous instances of alleged ineffective assistance,[7] on appeal he contends only that his trial counsel's failure to argue for a verdict of manslaughter, a lesser included offense of murder, was error.[8] The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to counsel and mandates "that the right to counsel is the right to the

---

[7] McKnelly's petition for post-conviction relief alleged numerous grounds of ineffective assistance of counsel, including that trial counsel failed to: (a) inform McKnelly he had previously represented the victim in an unrelated case; (b) conduct a complete investigation; (c) challenge the Probable Cause Affidavit; (d) file a motion to suppress McKnelly's statement to Detective J.D. Fortner; (e) file a motion to suppress Detective Fortner's second statement; (f) object to prosecutorial misconduct relating to McKnelly's cellmate; (g) object to prosecutorial misconduct relating to deals made with witnesses; (h) adequately cross-examine State's witnesses; (i) present evidence to support McKnelly's self-defense claim; (j) investigate, interview, or subpoena defense witnesses; (k) argue the lesser included offense of manslaughter; and (l) offer McKnelly's medical records at trial. McKnelly also claimed his trial counsel improperly waved an initial hearing and advised him to waive a jury trial. The post-conviction court meticulously addressed each of these claims in its order denying McKnelly relief.

[8] McKnelly does not explicitly specify whether he means voluntary or involuntary manslaughter, but he states trial counsel "failed to advocate for manslaughter, a crime of passion," Br. of Appellant at 8, which we interpret as voluntary manslaughter.

effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quotation omitted).

[13] To prove a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness, committing errors so serious that petitioner did not have the "counsel" guaranteed by the Sixth Amendment. *McCary v. State,* 761 N.E.2d 389, 392 (Ind. 2002)*.* The petitioner must also show prejudice; that is, a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id.*

[14] "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Counsel has wide latitude in selecting trial strategy and tactics, which we afford great deference. *Ward v. State*, 969 N.E.2d 46, 51 (Ind. 2012). We "will not speculate as to what may have been counsel's most advantageous strategy, and isolated poor strategy, bad tactics, or inexperience does not necessarily amount to ineffective assistance." *Sarwacinski v. State*, 564 N.E.2d 950, 951 (Ind. Ct. App. 1991) (citation omitted).

[15] Further, our supreme court has held that a tactical decision not to tender a lesser included offense instruction does not constitute ineffective assistance of counsel, even where the lesser included offense is inherently included in the greater offense. *Page v. State,* 615 N.E.2d 894, 895 (Ind. 1993) ("[T]o submit an instruction on voluntary manslaughter would have a tendency to negate [self-]

defense and give the message to the jury that there was really no self-defense at all but a deliberate killing in the heat of passion."). And although trial counsel could request such an instruction, in view of counsel's theory of self-defense, the failure to do so does not constitute ineffective assistance of counsel. *Id.* As in *Page,* counsel here testified that he tried the case on the theory of self-defense rather than argue for manslaughter, a lesser included offense of murder. Transcript of Evidence, Volume II at 16; s*ee Page*, 615 N.E.2d at 895 (stating, "There is no question that voluntary manslaughter in fact is an included offense in the crime of murder.").

[16] McKnelly contends that although not arguing for a lesser included offense is a sound strategy for a jury trial because it could confuse the jury, it is not a sound tactic for a bench trial because a judge is "inherently capable of not being confused as to lesser offense[s] or splitting the baby."[9] Br. of Appellant at 15. We disagree. Whether a bench trial or jury trial, this court gives trial counsel leeway in choosing a trial strategy. *See Hinesley v. State*, 999 N.E.2d 975, 984 (Ind. Ct. App. 2013) (using same standard for evaluating a claim that trial counsel's strategy in a bench trial was deficient as would be applied in a jury trial and concluding that although "counsel's manner of execution may not have been perfect or even preferred, it appears that his performance was consistently aimed at executing this chosen defense strategy").

---

[9] McKnelly provides no case law to support this assertion.

[17] Trial counsel testified at the post-conviction hearing that he believed self-defense was a more "tenable and reasonable defense" than arguing for voluntary manslaughter. Tr., Vol. II at 16. McKnelly testified that "the fight started [between him and Rogers] when [he] got stabbed in the chest" and that he "was scared for [his] life" before reaching for a knife to fight Rogers back. [Trial] Tr., Vol. III at 177. Because of this, it was not unreasonable that trial counsel would argue self-defense instead of voluntary manslaughter. Further, it is not proper for this court to second-guess an attorney through the distortions of hindsight. *Mftari v. State*, 537 N.E.2d 469, 473 (Ind. 1989).

[18] Trial counsel also testified that arguing for both self-defense and voluntary manslaughter would conflict. *See* Tr., Vol. II at 30. A person who knowingly or intentionally kills another human while acting under sudden heat commits voluntary manslaughter. Ind. Code § 35-42-1-3(a). Sudden heat is a mitigating factor that reduces murder to voluntary manslaughter. Self-defense, on the other hand, is a legal justification that requires "a defendant to have acted without fault, been in a place where he or she had a right to be, and been in reasonable fear or apprehension of bodily harm." *Henson v. State*, 786 N.E.2d 274, 277 (Ind. 2003). Arguing both sudden heat in an attempt to reduce the crime and self-defense to negate the crime altogether could conflict and based on McKnelly's encounter with Rogers, trial counsel believed that self-defense was "more consistent" with the facts. Tr., Vol. II at 16.

[19] Trial counsel's choice to only argue self-defense was a strategic decision and does not constitute deficient performance. *See Autrey v. State*, 700 N.E.2d 1140,

1141 (Ind. 1998) (stating employing an "all or nothing" strategy is not ineffective assistance of counsel). And because we hold that McKnelly's trial counsel's representation did not fall below an objective standard of reasonableness, we need not address whether McKnelly was prejudiced. Accordingly, the post-conviction court's determination that McKnelly's counsel was not ineffective was not clearly erroneous.

# Conclusion

[20] We conclude that McKnelly waived his right to challenge the post-conviction court's exclusion of evidence and that McKnelly did not receive ineffective assistance of trial counsel. Accordingly, we affirm the denial of his petition for post-conviction relief.

[21] Affirmed.

Crone, J., and Brown, J., concur.