**Michael SHEPHERD, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 70A01–0908–PC–388.

Court of Appeals of Indiana.

April 14, 2010.

Transfer Denied June 24, 2010.

Susan K. Carpenter, Public Defender of Indiana, Hope Fey, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, George P. Sherman, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Michael Shepherd appeals the denial of his petition for post-conviction relief ("PCR"). We affirm in part, reverse in part, and remand with instructions to vacate Shepherd's conviction for possession of cocaine.

### Issues

We address the following three issues:

I. Whether Shepherd's habitual offender claims are barred by the doctrine of res judicata;

II. Whether Shepherd's trial counsel and appellate counsel provided ineffective assistance by failing to argue that the State was statutorily prohibited from seeking to have him sentenced as a habitual offender; and

III. Whether his trial counsel provided ineffective assistance due to an alleged conflict of interest.

### Facts and Procedural History

The facts as reported in this Court's memorandum decision on direct appeal are as follows:

On August 11, 2004, Rush County Sheriff's Department Detective Joseph Jarman was contacted by Mary Jane Smiley, who indicated a willingness to make a controlled buy of cocaine from Shepherd. Smiley subsequently arranged the deal by telling Shepherd that she "had hooked up with somebody" and "needed an eight ball." After Shepherd agreed to obtain the drugs, Smiley met with Detective Jarman who provided purchase money, which Smiley gave to Shepherd before he drove to Indianapolis. Smiley told Shepherd that she would be waiting at the Rushville Holiday Inn Express, and would call him later with the room number.

After Shepherd left for Indianapolis, Smiley met Detective Jarman at the Holiday Inn, as he had arranged. Detective Jarman provided money for the rental of two adjacent rooms, 120 and 122. Although Detective Jarman knew that the crime would be more serious if committed within 1,000 feet of a public park, he testified that he did not choose the location for its proximity to a local park, approximately 850 feet from the

hotel rooms. Once the rooms were acquired, Smiley called Shepherd and told him to meet her in room 122.

When Shepherd arrived at the hotel room, he gave Smiley a small plastic bag of cocaine. She handed it to Detective Jarman, who then asked Shepherd if he could obtain more cocaine. Shepherd responded affirmatively. He was arrested, and a search of the car he had driven to Indianapolis revealed a cigarette package containing cocaine. Later tests indicated that Shepherd had provided Smiley with 1.53 grams of cocaine, and that .68 grams of cocaine were in the cigarette carton.

*Shepherd v. State*, No. 70A01–0504–CR–166, slip op. at 2–3, 842 N.E.2d 896 (Ind. Ct.App. Jan.20, 2006) (citations and footnote omitted), *trans. denied.*

The State charged Shepherd with class A felony dealing in cocaine within 1000 feet of a public park[1] and class B felony possession of cocaine within 1000 feet of a public park[2] and separately alleged that he was a habitual offender based on the following two prior felony convictions: a 1977 Louisiana conviction for attempted armed robbery and a 1997 Louisiana conviction for possession of cocaine. A jury found Shepherd guilty as charged, and the trial court sentenced him to concurrent terms of forty years for dealing in cocaine and fifteen years for possession of cocaine, with a thirty-year habitual offender enhancement. *Id.,* slip op. at 3.

In his direct appeal, Shepherd presented three arguments: (1) his class A felony conviction must be reduced to a class B felony conviction and his class B felony conviction must be reduced to a class D felony conviction because, pursuant to Indiana Code Section 35–48–4–16 ("De-

fenses to charge of selling narcotics near school or family housing"), his proximity to the park was brief and no one under eighteen was in the area and he was in the proximity of the park at the request of a law enforcement officer; (2) the State failed to prove that he was the person convicted of the prior felonies supporting the habitual offender allegation; and (3) his prior Louisiana conviction for possession of cocaine was improperly relied upon as a prior unrelated felony conviction for purposes of the habitual offender statute. This Court concluded that Shepherd waived the first issue because it had not been raised at trial; the evidence was sufficient to connect Shepherd to the two prior unrelated felony convictions; and his Louisiana conviction was properly relied upon as a prior unrelated felony conviction. *Id.,* slip op. at 10.

Shepherd then filed a petition for PCR, asserting that he received ineffective assistance of trial and appellate counsel. Specifically, Shepherd contended that his trial counsel was ineffective in that he (1) failed to argue that Shepherd was within 1000 feet of a park at the request of a law enforcement officer and failed to tender an instruction on the relevant statute; (2) failed, due to a conflict of interest, to cross-examine Bobbie Smiley, Mary Jane's daughter, about a recently dismissed criminal charge and pending criminal charges on which trial counsel also represented her just before and during Shepherd's trial; and (3) failed to argue at sentencing that Shepherd's habitual offender enhancement should attach to the class B felony rather than the class A felony conviction. Appellant's App. at 24–25. Shepherd argued that his appellate counsel was ineffective in that he failed to argue that (1) the trial court erred in ordering his habitual offend-

1. Ind.Code § 35–48–4–1.

2. Ind.Code § 35–48–4–6.

er enhancement to be served consecutive to the sentence for his class A felony conviction without specific reference as to which sentence was being enhanced; and (2) Shepherd's sentence was inappropriate.

Following a hearing, the post-conviction court issued findings of fact and conclusions of law, granting Shepherd's petition in part. The post-conviction court found that Shepherd's trial counsel provided ineffective assistance by failing to assert that Shepherd was within 1000 feet of a park at the suggestion of a law enforcement officer. Therefore, the post-conviction court reduced Shepherd's class A felony conviction to a class B felony and his class B felony conviction to a class D felony and remanded for resentencing.[3] The post-conviction court otherwise denied Shepherd's petition in relevant part as follows:

### CONCLUSIONS OF LAW

. . . .

4. Shepherd was found to be a habitual offender under Ind.Code § 35–50–2–8 on the basis of two prior unrelated felony convictions. The issue of the eligibility of Shepherd's predicate offenses were [sic] argued both in the direct appeal and at the hearing which was held on this Petition for Post Conviction Relief. This Court finds that Shepherd was habitual eligible based on evidence presented at trial in regards to [the] 1977 conviction for [attempted] armed robbery and the 1997 Felony conviction for possession of cocaine (both being two unrelated prior felonies). As the Court of Appeals pointed out, it was discovered in [Shepherd's] Pre–Sentence Investigation Report that he did have a prior unrelated conviction for dealing cocaine in Texas. Ind.Code § 35–50–2–8(b)(3)(C) states that the total number of unrelated convictions that the person has for dealing does not exceed one. This specific paragraph does not require the unrelated conviction to be a felony nor does it require that a dealing conviction be a "prior" unrelated conviction. Therefore, this Court finds that the underlying offense of dealing cocaine in the present case counts as one of these unrelated convictions. [Shepherd] conceded this point in his brief of appellant in the direct appeal. As to [Shepherd's] argument that [he] was not found to have had a previous Texas conviction by jury, that is not necessary, due to the fact that the State did prove to a jury the two prior unrelated Louisiana convictions. It would have then been up to [Shepherd] to present evidence that he had no other dealing convictions other than the underlying offense, and according to the evidence presented in this case, it appears to be a very high probability that he could not do so based on the Texas dealing offense, whether it was a felony or not. Also, based on the finding of the Court of Appeals and the arguments of both the State and [Shepherd] that the underlying offense could be used as one unrelated dealing conviction, even if [Shepherd] had moved for a dismissal of the Habitual Offender Enhancement prior to trial, the Court would have been prohibited from granting such a motion until the trial on the underlying offense had been concluded.

. . . .

10. The Court concludes that trial counsel was not laboring under a significant conflict of interest due to a simulta-

---

**3.** At the resentencing hearing, Shepherd was sentenced to a term of eighteen years for his class B felony dealing in cocaine conviction, enhanced by twenty-five years for his habitual offender finding, and a concurrent term of two years for his class D felony possession of cocaine conviction, for an aggregate term of forty-three years. Appellant's App. at 125.

neous representation of Bobbie Smiley. The Court also concludes that counsel was not sufficiently stymied in his ability to cross examine Ms. Smiley. [Shepherd] has failed to meet his burden of proof in showing that an absence of this conflict would have probably resulted in a different result. [Shepherd] was not denied his rights under the Sixth Amendment of the United States Constitution.

. . . .

12. [B]ased on the Court's previous conclusions in regards to the Habitual Offender Enhancement, the Court finds that Appellate counsel's assistance may not be considered ineffective for failing to raise an omitted insufficiency of the evidence claims [sic] and inadequately briefing claims in regards to that Enhancement because the Court does find that [Shepherd] was eligible for the Habitual Offender Enhancement.

Appellant's Br. at 34–38. Shepherd appeals.

### Discussion and Decision

#### *Standard of Review*

■■■ We observe that post-conviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under the Indiana Post–Conviction Rules. *Timberlake v. State,* 753 N.E.2d 591, 597 (Ind.2001) (citing Ind. Post–Conviction Rule 1(1)). Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). A petitioner who appeals the denial of PCR faces a rigorous standard of review, as the reviewing court may consider only the evidence and the reason-

able inferences supporting the judgment of the post-conviction court. *Kien v. State,* 866 N.E.2d 377, 381 (Ind.Ct.App.2007), *trans. denied.* The appellate court must accept the post-conviction court's findings of fact and may reverse only if the findings are clearly erroneous. *Bahm v. State,* 789 N.E.2d 50, 57 (Ind.Ct.App.2003), *trans. denied.* If a PCR petitioner was denied relief, he or she must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the post-conviction court. *Ivy v. State,* 861 N.E.2d 1242, 1244 (Ind.Ct.App.2007), *trans. denied.*

Shepherd argues that he received ineffective assistance of both trial and appellate counsel. The Sixth Amendment to the United States Constitution protects the right to counsel and the right to effective assistance of counsel.[4] A claim of ineffective assistance of trial counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant so much that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Davidson v. State,* 763 N.E.2d 441, 444 (Ind.2002) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* To prevail on an ineffective assistance of

---

**4.** The Sixth Amendment provides, in pertinent part, "In all criminal prosecutions, the ac- cused shall enjoy the right . . . to have the Assistance of Counsel for his defense."

counsel claim based upon trial counsel's failure to file a motion, the appellant must demonstrate that the trial court would have granted said motion. *Danks v. State,* 733 N.E.2d 474, 489 (Ind.Ct.App.2000), *trans. denied.*

■ We analyze an ineffective assistance of appellate counsel claim similarly to an ineffective assistance of trial counsel claim. *Overstreet v. State,* 877 N.E.2d 144, 165 (Ind.2007). The petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that but for appellate counsel's deficient performance, there is a reasonable probability that the result of the appeal would have been different. *Id.* As with ineffective assistance of trial counsel claims, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Timberlake,* 753 N.E.2d at 603.

There are three basic ways in which appellate counsel may be considered ineffective: 1) when counsel's actions deny the defendant his right of appeal; 2) when counsel fails to raise issues that should have been raised on appeal; and 3) when counsel fails to present claims adequately and effectively such that the defendant is in essentially the same position after appeal as he would be had counsel waived the issue.

*Grinstead v. State,* 845 N.E.2d 1027, 1037 (Ind.2006).

### I. Res Judicata

■ Shepherd argues that his trial counsel was ineffective in failing to move "to dismiss the habitual offender charge" and failing to move "for judgment of acquittal at the close of the evidence on the ground that Shepherd was ineligible" for sentencing under the habitual offender statute. Appellant's Br. at 11. He also asserts that his appellate counsel was ineffective in omitting a meritorious habitual offender claim and inadequately briefing a second habitual offender claim in the direct appeal. Shepherd's ineffective assistance of counsel arguments are based on the underlying assertion that the requirements of the habitual offender statute were not met in his case. Thus, as a preliminary matter, we must address the State's contention that Shepherd's challenge to his habitual offender enhancement is barred by res judicata.

The doctrine of res judicata bars a later suit when an earlier suit resulted in a final judgment on the merits, was based on proper jurisdiction, and involved the same cause of action and the same parties as the later suit. As a general rule, when a reviewing court decides an issue on direct appeal, the doctrine of res judicata applies, thereby precluding its review in post-conviction proceedings. The doctrine of res judicata prevents the repetitious litigation of that which is essentially the same dispute. And, a petitioner for post-conviction relief cannot escape the effect of claim preclusion merely by using different language to phrase an issue and define an alleged error. Where an issue, although differently designated, was previously considered and determined upon a criminal defendant's direct appeal, the State may defend against defendant's post-conviction relief petition on grounds of prior adjudication or res judicata.

*Reed v. State,* 856 N.E.2d 1189, 1194 (Ind. 2006) (citations, quotation marks, brackets, and emphasis omitted).

On direct appeal, Shepherd argued that his 1997 Louisiana possession of cocaine conviction did not count as a prior unrelated felony conviction. Petitioner's Ex. 2 at 14–15 ("Brief of Appellant"). Shepherd

relied upon Indiana Code Section 35–50–2–8(d)(3), which provides that a conviction does not count as a prior unrelated felony conviction if all three of the following requirements are satisfied:

(A) The offense is an offense under IC 16–42–19 or IC 35–48–4.

(B) The offense is not listed in section 2(b)(4) of this chapter.

(C) The total number of unrelated convictions that the person has for:

(i) dealing in or selling a legend drug under IC 16–42–19–27;

(ii) dealing in cocaine or a narcotic drug (IC 35–48–4–1);

(iii) dealing in a schedule I, II, III controlled substance (IC 35–48–4–2);

(iv) dealing in a schedule IV controlled substance (IC 35–48–4–3); and

(v) dealing in a schedule V controlled substance (IC 35–48–4–4);

does not exceed one (1).

Shepherd argued that subparagraph (d)(3)(A) applied because his 1997 possession of cocaine conviction was an offense related to a controlled substance, subparagraph (d)(3)(B) applied because the 1997 possession of cocaine conviction is not listed in section 2(b)(4), and subparagraph (d)(3)(C) applied because the "only conviction for dealing is the Rush County case that is the subject of this appeal." Petitioner's Ex. 2 at 15.

In its appellee's brief on direct appeal, the State agreed that the first two requirements of subparagraph (d)(3) were met, but disagreed as to the total number of unrelated convictions Shepherd had for dealing offenses listed in subparagraph (d)(3)(C). The State noted that Shepherd's presentence investigation report showed that he had a 1999 Texas conviction for delivery of less than one gram of cocaine, and asserted that the relevant Texas statute was similar to our statute defining dealing in cocaine, Indiana Code Section 35–48–4–1. Petitioner's Ex. 3 at 8–9 ("Brief of Appellee"). Thus, the State asserted, the total number of unrelated convictions for dealing cocaine was two, and therefore, Indiana Code Section 35–50–2–8(d)(3)(C) did not apply. Shepherd's appellate counsel did not file a reply brief. Ultimately, this Court agreed with the State and affirmed Shepherd's habitual offender status.

A res judicata claim similar to the State's was addressed by our supreme court in *Reed:*

On direct appeal counsel for Reed phrased the sentencing claim as follows: "Whether the trial court failed to adequately articulate the reasons for enhancing Mr. Reed's sentences as well as running them consecutively." In addressing this issue the Court of Appeals examined the trial court's sentencing statement and relevant case authority identifying the factors that a court may consider when enhancing a sentence or ordering consecutive sentences. The court determined, "Although here the trial court's sentencing explanation is not ideal, it does meet the minimum requirements necessary to be adequate. The record indicates that the trial court engaged in an evaluative process. The trial court identified the aggravating and mitigating factors."

It is clear that although a sentencing issue was raised on direct appeal, no argument was made that the sentence was governed by Indiana Code section 35–50–1–2(c) (1995 Supp.). Accordingly the Court of Appeals did not address this issue. We do not view Reed's current claim as using different language to rephrase an issue that was adversely decided on direct appeal. Thus, the doctrine of res judicata is not applicable here. *See Haggard v. State,* 810 N.E.2d

751, 756 (Ind.Ct.App.2004) (reversing in part the decision of the post-conviction court and addressing the claim that sentence was improper under Indiana Code section 35–50–1–2(c) although related sentencing issue raised sua sponte on direct appeal). We therefore address Reed's claim that he was denied effective assistance of appellate counsel.

856 N.E.2d at 1194–95 (some citations omitted).

On appeal from the partial denial of his PCR petition, Shepherd argues that the requirements of Indiana Code Section 35–50–2–8(b)(3) are not met. As we will see, that paragraph is similar to paragraph (d)(3) in some, but not all, respects. In addition, Shepherd argues that the "total number of unrelated convictions" does not exceed one because neither his underlying dealing in cocaine conviction nor his Texas dealing in cocaine conviction can be counted as unrelated convictions. Although these arguments are related to the arguments Shepherd presented on direct appeal, Shepherd has never argued that his underlying conviction could not be counted in determining whether his dealing convictions exceeded one, and we do not think that his current arguments consist merely of different language used to rephrase an issue adversely decided on direct appeal. *See Reed,* 856 N.E.2d at 1195. Moreover, appellate counsel may be ineffective for failing to adequately and effectively present claims. *Grinstead,* 845 N.E.2d at 1037. Shepherd's appellate counsel did not file a reply brief and therefore did not respond to the State's assertion that his Texas conviction could be counted in determining his total number of dealing convictions. We therefore decline to find that Shepherd's arguments regarding the habitual offender statute are barred by res judicata.

## II. Habitual Offender Enhancement

Shepherd argues that neither his underlying dealing conviction nor his prior Texas dealing conviction can be relied upon to satisfy the requirement that a defendant must have more than one unrelated dealing conviction, citing Indiana Code Section 35–50–2–8, which provides as follows:

(a) Except as otherwise provided in this section, the state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.

(b) The state may not seek to have a person sentenced as a habitual offender for a felony offense under this section if:

(1) the offense is a misdemeanor that is enhanced to a felony in the same proceeding as the habitual offender proceeding solely because the person had a prior unrelated conviction;

(2) the offense is an offense under IC 9–30–10–16 or IC 9–30–10–17; or

(3) all of the following apply:

(A) The offense is an offense under IC 16–42–19 or IC 35–48–4.

(B) The offense is not listed in section 2(b)(4) of this chapter.

(C) The *total number of unrelated convictions* that the person has for:

(i) dealing in or selling a legend drug under IC 16–42–19–27;

(ii) dealing in cocaine or a narcotic drug (IC 35–48–4–1);

(iii) dealing in a schedule I, II, III controlled substance (IC 35–48–4–2);

(iv) dealing in a schedule IV controlled substance (IC 35–48–4–3); and

(v) dealing in a schedule V controlled substance (IC 35–48–4–4); does not exceed one (1).

(Emphasis added.) As in the direct appeal, Shepherd and the State dispute the "total number of unrelated convictions" that Shepherd has accumulated for dealing pursuant to (b)(3)(C).

We first address Shepherd's argument that his underlying dealing in cocaine conviction cannot be counted. In reviewing his claim, we note that the "primary goal of statutory interpretation is to give effect to the intention of the legislature." *Westbrook v. State,* 770 N.E.2d 868, 871 (Ind.Ct.App.2002). "Words will be given their plain and ordinary meaning unless otherwise indicated by the statute." *Id.* Criminal statutes are to be construed strictly against the State and in favor of the accused. *Merritt v. State,* 829 N.E.2d 472, 475 (Ind.2005). However, we assume that the language in the statute was used intentionally and every word should be given effect and meaning. *Id.*

As Shepherd acknowledges, this issue was recently addressed in *Peoples v. State,* 912 N.E.2d 398 (Ind.Ct.App.2009), *trans. granted,* wherein another panel of this Court stated as follows:

The parties disagree on only one point: how to calculate the total number of unrelated dealing convictions Peoples has accumulated. Peoples argues the habitual offender enhancement cannot be attached to the instant conviction under subsection (b)(3) because the instant conviction is a drug offense, satisfying subsection (b)(3)(A); it was not aggravated because guns or children were involved, satisfying subsection (b)(3)(B); and "the number of *priors for dealing*" does not exceed one, satisfying subsection (b)(3)(C)(i)-(v).

But the language of subsection (b)(3)(C) does not say more than one

"prior," nor does the identical language in subsection (d)(3)(C)—rather, it requires that "the *total number of unrelated convictions*" for certain drug offenses "does not exceed one (1)." Peoples' instant conviction of dealing cocaine and his prior conviction of cocaine possession with intent to deliver are undoubtedly "unrelated" and the two convictions undoubtedly "exceed one."

The State argues the statute is not limited to "only prior convictions but requires the summation of the 'total number of unrelated convictions' Defendant has accumulated for dealing drugs," and notes Peoples "inserts the word 'prior' before 'unrelated convictions' where it does not exist." We agree. There are numerous references throughout the statute to the word "prior," but the references to unrelated convictions in subsections (b)(3)(C) and (d)(3)(C) are not modified by the word "prior": "Had the legislature intended such a limitation, [it] could have easily included the term 'prior' as [it] did elsewhere in the statute." We decline to read such a limitation into subsections (b)(3)(C) and (d)(3)(C) when the plain language of the statute does not include it, and when nothing suggests the legislature intended such a limitation.

*Id.* at 401–02 (citations and footnote omitted) (emphases in original).

Nevertheless, Shepherd urges us not to follow *Peoples.* Shepherd notes that there is parallel language in subsection 35–50–2–8(a), which reads, "[T]he state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument[,]" and subsection (b), which reads, "The state may not seek to have a person sentenced as a habitual offender for a felony offense under this

section if...." According to Shepherd, this parallel language indicates that the point in time that the State seeks to have a defendant sentenced as a habitual offender is when the State files the habitual offender allegation, and therefore, the requirements of subsection (b) must be satisfied by that point in time. Shepherd asserts that when the State files a habitual offender allegation, the defendant has not yet been convicted of the underlying dealing offense, which means that the conviction for the underlying dealing offense cannot be counted toward the total number of unrelated convictions in subparagraph (b)(3)(C). Shepherd thus contends that the total number of unrelated convictions can only logically refer to the total number of prior unrelated convictions.

We do not think that Shepherd's argument is entirely unreasonable. As the *Peoples* court recognized, this statute has been referred to as " 'confusing' " and interpreted to mean that " 'a trial court is prohibited from enhancing a drug offense under the general habitual offender statute where the underlying offense is not delineated in Indiana Code § 35–50–2–2(b)(4) and the defendant has not accrued two or more unrelated dealing convictions.' " 912 N.E.2d at 401 (quoting *Johnican v. State,* 804 N.E.2d 211, 216 (Ind.Ct.App.2004)). We look forward to more specific direction from our legislature and/or our supreme court on this issue. While we think that Shepherd's argument merits consideration, we think that the plain language argument set forth in *Peoples* is more straightforward. Thus, we conclude that Shepherd's underlying dealing in cocaine conviction may be counted in determining the total number of unrelated convictions pursuant to Indiana Code Section 35–50–2–8(b)(3)(C).

■ We now address whether the 1999 Texas conviction for dealing in cocaine may be used to determine the total number of unrelated convictions. Shepherd was convicted of that offense pursuant to 481.112 of the Texas Health and Safety Code, which at the time of Shepherd's conviction defined the delivery of less than one gram of cocaine as follows:

(a) ... a person commits an offense if the person knowingly or intentionally manufactures, delivers, or possesses with intent to manufacture or deliver [cocaine].

(b) An offense under Subsection (a) is a state jail felony if the amount of the controlled substance to which the offense applies is, by aggregate weight, including adulterants or dilutants, less than one gram.

The punishment for a state jail felony at the time of Shepherd's conviction was "confinement in a state jail for any term of not more than two years or less than 180 days." Tex.Code § 12.35. However, Texas Code Section 12.44(a) provided,

A court may punish a defendant who is convicted of a state jail felony by imposing the confinement permissible as punishment for a Class A misdemeanor if, after considering the gravity and circumstances of the felony committed and the history, character, and rehabilitative needs of the defendant, the court finds that such punishment would best serve the ends of justice.

As punishment for his Texas conviction for dealing cocaine, Shepherd received a class A misdemeanor sentence. In this case, Shepherd's appellate attorney did not bring this fact to the attention of this Court on direct appeal. Shepherd contends that, because he received a class A misdemeanor sentence, his Texas conviction is indistinguishable from class D felony convictions in Indiana for which judgments may be entered as class A misdemeanors, citing Indiana Code Sec-

tion 35–50–2–7(b), which reads, "Notwithstanding subsection (a), if a person has committed a Class D felony, the court *may enter judgment of conviction* of a Class A misdemeanor and sentence accordingly." (Emphasis added.) Shepherd then concludes that "a Class D felony for which the sentence was entered as a Class A misdemeanor under I.C. § 35–50–2–7(b) is not considered a 'felony' conviction under the habitual offender statute[,]" Appellant's Br. at 17, citing Indiana Code Section 35–50–2–1(b), which provides,

> As used in this chapter, "felony conviction" means a conviction, in any jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one (1) year. However, it does not include a conviction with respect to which the person has been pardoned, or a conviction of a Class A misdemeanor under section 7(b) of this chapter.

Shepherd's argument misses an important distinction. Even though he was sentenced for a class A misdemeanor under the Texas Code, the Texas Code does not permit his felony conviction to be reduced to a misdemeanor conviction. Shepherd cannot escape the fact that he was convicted of a Texas state jail felony, which is equivalent to an Indiana class D felony. Put another way, under the plain language of the Texas Code, Shepherd could have been sentenced to a term of up to two years, which satisfies the requirement in Indiana Code Section 35–50–2–1(b) that the person "might have been imprisoned for more than one year." Therefore, his Texas "state jail felony" conviction is not equivalent to a class D felony reduced to a class A misdemeanor under Indiana Code Section 35–50–2–7(b).[5] We conclude that Shepherd's Texas dealing in cocaine conviction may be counted toward "the total number of unrelated convictions" in Indiana Code Section 35–50–2–8(b)(3)(C).[6] We previously determined that Shepherd's underlying dealing conviction may be counted in the total number of unrelated convictions, and consequently, the total number of Shepherd's unrelated dealing convictions exceeds one. It follows that Indiana Code Section 35–50–2–8(b) does not preclude the State from seeking to have Shepherd sentenced as a habitual offender, and from that we conclude that neither trial nor appellate counsel rendered ineffective assistance in failing to pursue a strategy based upon a subparagraph (b)(3)(C) challenge to his habitual offender eligibility. Accordingly, we affirm the post-conviction court as to this issue.

### III. Conflict of Interest

 Shepherd's trial counsel also represented one of the State's witnesses, Bobbie Smiley, in a pending case. Bobbie lived with Shepherd and was his girlfriend at the time he committed the instant offenses. Bobbie is also the daughter of the State's main witness, Mary Jane. At the

---

5. Because we find that Shepherd's Texas state jail felony conviction is not equivalent to an Indiana class D felony that has been reduced to a class A misdemeanor conviction, we need not address Shepherd's equal protection argument.

6. In his reply brief, Shepherd asserts that his Texas conviction for dealing in cocaine is not sufficiently similar to an Indiana conviction for dealing in cocaine because an Indiana conviction for dealing in cocaine is a class B felony. We disagree with Shepherd's suggestion that the punishment defines the crime. As this Court noted on direct appeal, "[T]he language of the applicable Texas statute at the time of Shepherd's conviction is similar to the language of the Indiana statute defining dealing in cocaine." *Shepherd*, slip op. at 9 & n. 3; *see* Ind.Code § 35–48–4–1 ("Dealing in cocaine or narcotic drug").

start of trial, Shepherd's trial counsel informed the trial court that Shepherd believed there was a conflict of interest due to counsel's representation of Bobbie. Shepherd's counsel told the trial court that he had represented Bobbie in two cases that had been dismissed (a felony neglect charge and a minor in consumption of alcohol charge), and currently represented her on maintaining a common nuisance and possession of marijuana charges, but that an oral agreement had been worked out in which the maintaining a common nuisance charge would be dismissed and Bobbie would plead guilty to possession of marijuana. Shepherd's counsel told the trial court that he did not perceive a conflict of interest because Bobbie's pending case was unrelated to Shepherd's. Shepherd's counsel moved the trial court for permission to withdraw, which the trial court denied.

At trial, Bobbie testified that she was present in the house when Shepherd agreed to obtain cocaine for Mary Jane. Trial Tr. at 430. She testified that she had borrowed James Wooten's car, driven it, and offered the use of the car to Shepherd, who drove it to the Holiday Inn to meet Mary Jane. *Id.* at 428–29, 433–34, 436. Bobbie also testified that she smoked Marlboro Lights and that Shepherd smoked Newport 100s. *Id.* at 434. The testimony regarding the brand of cigarettes Bobbie and Shepherd smoked is significant because the cocaine that the police recovered from the car Shepherd drove to the Holiday Inn was in a Newport 100s cigarette package.

On cross-examination, Shepherd's counsel asked Bobbie whether she had ever smoked or bought Newport 100s, and she answered affirmatively. *Id.* at 436. He also asked her whether she knew if anyone other than Wooten, Shepherd, and herself

had driven the car that day, and she admitted that she did not know. *Id.* at 437.

 Shepherd argues that his trial counsel's assistance was impaired by his representation of Bobbie in an unrelated case. A criminal defendant's Sixth Amendment right to effective assistance of counsel includes the right to conflict-free representation. *Tate v. State,* 515 N.E.2d 1145, 1146 (Ind.Ct.App.1987) (citing *Holloway v. Arkansas,* 435 U.S. 475, 482, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)), *trans. denied.* To prevail on a claim of conflict of interest, the defendant must demonstrate to the post-conviction court that trial counsel had an actual conflict of interest and that the conflict adversely affected counsel's performance. *Woods v. State,* 701 N.E.2d 1208, 1223 (Ind.1998) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052). Once a defendant has demonstrated an actual conflict and an adverse effect on his lawyer's performance, the prejudice prong of an ineffective assistance claim is presumed. *Id.* (citing *Burger v. Kemp,* 483 U.S. 776, 783, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987)).

> An adverse effect on performance caused by counsel's failure to act requires a showing of (1) a plausible strategy or tactic that was not followed but might have been pursued; and (2) an inconsistency between that strategy or tactic and counsel's other loyalties, or that the alternate strategy or tactic was not undertaken due to the conflict.

*Id.*

 Although the post-conviction court found that any conflict in trial counsel's representation of both Shepherd and Bobbie was not significant, the State apparently concedes that there was an actual conflict of interest and argues only that Shepherd has failed to show that trial

counsel's performance was adversely affected. We observe that

> [an] appellee's failure to respond to an issue raised in an appellant's brief is, as to that issue, akin to failing to file a brief. This failure does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required. However, counsel for appellee remains responsible for controverting arguments raised by appellant. For appellant to win reversal on the issue, he must establish only that the lower court committed prima facie error. Prima facie means at first sight, on first appearance, or on the face of it.

*Cox v. State,* 780 N.E.2d 1150, 1162 (Ind. Ct.App.2002) (citations omitted).

Shepherd contends that there was an actual conflict of interest because (1) charges could have been brought against Bobbie for drugs and drug paraphernalia that were found in the house shortly after Shepherd's arrest; and (2) the plea agreement reached in Bobbie's pending case could have been rejected, and therefore, it "was clearly in her best interests to testify against Shepherd in a way that pleased the State." Appellant's Br. at 21. We conclude that Shepherd presents a prima facie case of actual conflict.

 Shepherd then asserts that his trial counsel's performance was adversely affected in that he failed to impeach Bobbie's credibility by cross-examining her as to her pending charges and the amount of time she was facing without the as yet unfinalized agreement. It is true that Shepherd's trial counsel did not ask Bobbie any questions at all regarding her pending case or any plea agreement she had with the State. We observe that " '[c]ross-examination is the principal means by which the believability of the witness and the truth of [her] testimony

are tested.' " *Coates v. State,* 534 N.E.2d 1087, 1095 (Ind.1989) (quoting *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)); *see also Murray v. State,* 761 N.E.2d 406, 408 (Ind.2002) (linking cross-examination regarding witness's plea agreement to jury's task of resolving conflicts in the evidence and determining witness credibility). We conclude that Shepherd has demonstrated that a plausible tactic or strategy was not followed due to the conflict.

 The State counters that

> Bobbie was merely one witness and a minor one at that. This is because she did not witness the drug transaction between Shepherd and Mary Jane.... Shepherd cannot show that trial counsel's performance was adversely affected by the alleged conflict in light of the fact that no amount of cross-examination of Bobbie would have changed the fact that a law enforcement officer personally witnessed the transaction between Shepherd and Mary Jane, and Shepherd admitted to the officer that he could provide more cocaine.

Appellee's Br. at 11. We conclude that, as to the dealing in cocaine conviction, trial counsel's assistance was not adversely affected because a law enforcement officer personally witnessed Shepherd sell cocaine to Mary Jane, and therefore Bobbie's testimony regarding the conversation between Shepherd and Mary Jane at the house is irrelevant. Accordingly, we affirm the post-conviction court's conclusion that Shepherd's Sixth Amendment rights were not violated with respect to Shepherd's conviction for dealing in cocaine.

 Yet, the same conclusion cannot be reached with regard to the possession of cocaine conviction. Bobbie's testimony was directly related to the ownership of the cigarette package containing cocaine

that was in the car that both she and Shepherd had driven on the day in question. Her credibility was an important factor for the jury's consideration. We therefore conclude that trial counsel's assistance as to the possession of cocaine conviction was adversely affected by an actual conflict of interest. Because Shepherd has established an actual conflict and an adverse effect on his lawyer's performance as to his possession of cocaine conviction, the prejudice prong of his ineffective assistance claim is presumed. *See Woods,* 701 N.E.2d at 1223. Therefore, as to Shepherd's conviction for possession of cocaine, we reverse the post-conviction's conclusion that Shepherd did not receive ineffective assistance of trial counsel and remand with instructions to vacate that conviction. In all other respects the judgment of the post-conviction court is affirmed.

Affirmed in part, reversed in part, and remanded with instructions.

BAKER, C.J., and DARDEN, J., concur.