## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 29 2016, 9:41 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Edgar
J. Edgar Law Offices, Prof. Corp.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Daniel Snell,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

July 29, 2016

Court of Appeals Case No.
49A04-1511-PC-1891

Appeal from the Marion Superior Court

The Honorable Kurt M. Eisgruber, Judge

The Honorable Steven J. Rubick, Magistrate

Trial Court Cause No.
49G01-0608-PC-151692

**Crone, Judge.**

## Case Summary

[1] Daniel Snell was convicted of two counts of murder and sentenced to 100 years of imprisonment. His convictions and sentence were upheld on direct appeal. Snell filed a petition for postconviction relief ("PCR") alleging that his trial counsel was ineffective in failing to investigate alleged third-party suspects, failing to timely discover an alibi witness, opening the door to allegedly harmful evidence, and failing to inform him of an alleged plea offer from the State. The postconviction court denied Snell's petition.

[2] On appeal, Snell contends that the postconviction court's ruling is clearly erroneous. Finding no error, we affirm.

## Facts and Procedural History

[3] In Snell's direct appeal, another panel of this Court recited the following facts:

> On the night of August 2, 2006, Snell, Charles Richardson, and two women were hanging out in the driveway of a residence on North Webster in Indianapolis, Indiana. Antoine Beech and Eric Gray stopped by the residence to use some cocaine they had bought. Beech and Gray saw that Snell had a handgun in his waistband and thought he was acting "weird" and "belligerent." Transcript at 76, 159. After the two women went inside the residence, Allan Westmoreland and Latasha Pettis approached in a vehicle. Richardson hailed Westmoreland, and Westmoreland parked the car. At some point, Gray heard Richardson say, "there go the neighborhood snitch." *Id.* at 163.
>
> Richardson and Beech talked to Westmoreland, and then Beech went to the rear of another vehicle to use his cocaine. As Beech and Gray were using their cocaine, they saw Snell approach

Westmoreland's vehicle by sneaking through some bushes. Snell then reached inside the vehicle and started shooting Westmoreland. Snell went to the vehicle's passenger side, dragged Pettis out of the vehicle as she screamed, and shot her. Snell then went back to the driver's side of the vehicle, reloaded his gun, and shot Westmoreland again.

The first officer on the scene discovered that Westmoreland was dead and that Pettis was critically wounded. Pettis told the officer that a young black man with a bald head wearing blue shorts shot her. Less than three hours later, Snell reported to the police that his 9 mm gun had been stolen.

Both Westmoreland and Pettis died from their gun shot wounds. Westmoreland had been shot nine times, and Pettis had been shot two times. All of the casings found at the scene were "9 mm Luger caliber cartridge casings," and the bullets were "9 mm." *Id*. at 403-404. All of the bullets and casings large enough for analysis were fired from the same gun. When officers attempted to arrest Snell a few days later, Snell identified himself as "Jonathan Snell," his brother, and fled on foot. *Id*. at 327. Snell was eventually apprehended by the officers.

The State charged Snell with two counts of murder. After the State rested at the jury trial, Snell attempted to call his girlfriend, Sarajevo Anderson, as an alibi witness. Noting that Snell had failed to file a notice of alibi, the trial court denied Snell's request to present Anderson as an alibi witness and noted that Snell had not demonstrated good cause for his failure to file a timely notice of alibi. Snell then testified at the trial that he left the residence on North Webster before Westmoreland arrived and that he spent the night with Anderson.

*Snell v. State*, No. 49A02-0708-CR-700, 2008 WL 2054041, at *1 (Ind. Ct. App.

May 15, 2008), *trans. denied*. The trial court denied Snell's proposed alibi

instruction. The jury found Snell guilty as charged in June 2007. The trial court sentenced him to 100 years of imprisonment.

[4] On direct appeal, Snell argued that the trial court erred in excluding his alibi witness and denying his alibi instruction and that his sentence was inappropriate. Another panel of this Court affirmed the trial court in all respects. *See id*. Snell filed a PCR petition raising several claims of ineffective assistance of trial counsel and freestanding error. After a hearing, the postconviction court denied Snell's petition in October 2015. This appeal followed. Additional facts will be provided as necessary.

## Discussion and Decision

[5] Snell asserts that the postconviction court erred in denying his PCR petition. Postconviction proceedings do not grant a petitioner a "super-appeal" but are limited to those issues available under Indiana's postconviction rules. *Shepherd v. State*, 924 N.E.2d 1274, 1280 (Ind. Ct. App. 2010), *trans. denied*. Postconviction proceedings are civil in nature, and a petitioner bears the burden of proving his grounds for relief by a preponderance of the evidence. *Id*. A petitioner appealing the denial of PCR faces a rigorous standard of review, as we may consider only the evidence and the reasonable inferences supporting the judgment of the postconviction court. *Id*. We will not reweigh the evidence or judge witness credibility. *Hinesley v. State*, 999 N.E.2d 975, 981 (Ind. Ct. App. 2013), *trans. denied* (2014). We must accept the postconviction court's findings of fact and may reverse only if they are clearly erroneous. *Shepherd*,

924 N.E.2d at 1280. A petitioner must show that the evidence as a whole leads unerringly and unmistakably to an opposite conclusion than that reached by the postconviction court. *Id.*

[6] Snell claims that he was denied his Sixth Amendment right to the effective assistance of trial counsel. To prevail on such a claim, a petitioner must show that his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Little v. State*, 819 N.E.2d 496, 501 (Ind. Ct. App. 2004), *trans. denied* (2005). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Talley v. State*, 51 N.E.3d 300, 303 (Ind. Ct. App. 2016), *trans. denied*. Counsel's performance is presumed effective, and a petitioner must offer strong and convincing evidence to overcome this presumption. *Little*, 819 N.E.2d at 501. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland v. Washington*, 466 U.S. 668, 697 (1984). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, … that course should be followed." *Id.* Snell raises four ineffectiveness claims. We address each in turn.

[7] First, Snell alleges that counsel was ineffective in failing to investigate and prepare a defense based on the alleged involvement of three men against whom Westmoreland was scheduled to testify in an attempted murder case. All three

men were in jail when Westmoreland and Pettis were killed. Before trial, the State filed a motion in limine to exclude any evidence of third-party involvement in the murders. The trial court told Snell's counsel, "If you want to introduce evidence on the third party committing the crime, you would have to have some evidence connecting the person to that crime." Trial Tr. at 9. *See Pelley v. State*, 901 N.E.2d 494, 505 (Ind. 2009) (reciting "the widely-accepted principle that before evidence of a third party is admissible, the defendant must show some connection between the third party and the crime."). Counsel admitted that she had no evidence that the three men had committed or conspired with others to commit the murders. The trial court granted the State's motion in limine but allowed counsel to make an offer of proof.

[8]     In its order, the postconviction court found,

> While he is highly critical of counsel's efforts at presenting a third party type defense, [Snell] has presented no additional evidence that establishes a credible connection between any third parties and the murders in this case. Without this evidence, the Court must find that [Snell] failed to establish that he was prejudiced by counsel's actions.

Appellant's App. at 131. Indeed, Snell has failed to assert, let alone establish, that he was prejudiced by counsel's actions, i.e., that but for counsel's alleged error, there is a reasonable probability that the result of his trial would have been different. Consequently, this claim fails.

[9]     Second, Snell asserts that counsel was ineffective in failing to timely discover an alibi witness. When Snell was questioned by the police after his arrest, he

claimed that he was "with some friends [in] Bloomington" at the time of the murders. Trial Tr. at 503. On the morning of the last day of trial, Snell told his counsel that he had been with a woman named Sarajevo Anderson at the time of the murders and had lied about his whereabouts because he did not want to upset his girlfriend. Counsel informed the trial court of this development after the State rested its case, and she asked to call Anderson as an alibi witness. The trial court denied this request as untimely[1] and in "horribly bad faith": "[Y]ou're telling me your client didn't want to disclose because he didn't want to make his girlfriend jealous. It's ridiculous when you're charged with two counts of murder and facing 125 years in prison." *Id*. at 469-70. Snell took the stand and claimed that he had been with Anderson at the time of the murders. In a subsequent offer of proof, Anderson claimed that Snell was with her on the night of the murders from approximately 10:00 p.m. onward.

[10] The postconviction court determined that, "[r]ather than a strategic error, or a lack of investigation on the part of defense counsel," the alibi issues "were caused by [Snell] himself" and thus were "simply invited error." Appellant's App. at 134. We agree. "The doctrine of invited error is grounded in estoppel. Under this doctrine, a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct." *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005) (citations and

---

[1] *See* Ind. Code § 35-36-4-1 (requiring defendant to file notice of alibi defense no later than twenty days prior to omnibus date in felony case).

quotation marks omitted).  "Invited error is not reversible error."  *Kelnhofer v. State*, 857 N.E.2d 1022, 1024 (Ind. Ct. App. 2006).  As far as Snell's counsel was aware, her client had claimed to be in Bloomington on the night of the murders, and she cannot be held responsible for Snell's last-minute revelation about Anderson, who testified during the offer of proof that Snell had told her "not to come forward" because "he was concerned about [her]."  Trial Tr. at 564.  Snell has only himself to blame for the exclusion of his alibi witness.

[11]  Third, Snell argues that counsel was ineffective by opening the door to allegedly damaging evidence.  In cross-examining Detective Thomas Lehn, Snell's counsel accused him of having "nothing else except the testimony of Mr. Beech and Mr. Gray and Mr. Richardson" regarding Snell's involvement in the murders.  Trial Tr. at 439.  Detective Lehn said, "No, ma'am, that's not accurate."  *Id*.  Counsel asked, "And what would that be?"  *Id*.  The detective answered, "I have statement[s] from Shaquanna Johnson, statements from Tamara Brown - -"  *Id*.  Counsel objected on hearsay grounds.  The trial court responded, "He didn't say what the statements were.  You asked and he told […] the jury.  Next question."  *Id*.  The postconviction court found that Snell had "not established, or even argued that he suffered any specific prejudice from admission of this evidence[.]"  Appellant's App. at 135.  The same is true on appeal, and therefore this claim fails.

[12]  Fourth, and finally, Snell contends that counsel failed to inform him of a plea offer from the State, which our supreme court has said is "a denial of effective assistance of counsel[.]"  *Gray v. State*, 579 N.E.2d 605, 607 (Ind. 1991).  At the

PCR hearing, counsel testified that the State tendered a plea offer of thirty years and that she did not tell Snell about it because she "did not believe that he would turn over anyone" in exchange for the plea. PCR Tr. at 20. Two of the prosecutors assigned to Snell's case, however, testified that no plea offer was made. *Id*. at 37, 52. The postconviction court found the prosecutors' testimony more credible, and we will not second-guess that determination on appeal. Finding no error, we affirm the denial of Snell's PCR petition.

[13] Affirmed.

Kirsch, J., and May, J., concur.